# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RUBEN R. WARD,

        Plaintiff,

        v.                                    Case No. 07-C-107

CHARLES LARSON, LINDA KLEINSTELBER,
and BELINDA SCHRUBBE,

        Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. #35), DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL (DOC. #53), AND DISMISSING THE PLAINTIFF'S CLAIMS AND THIS ACTION**

The plaintiff, who is incarcerated at the Wisconsin Resource Center, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He is proceeding *in forma pauperis* on an Eighth Amendment deliberate indifference to a serious medical need claim based on allegations that the defendants failed to treat his laryngeal cancer. The defendants have filed a motion for summary judgment which is addressed below.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over

"material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material fact; and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Id.* at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## FACTS[1]

The plaintiff, Ruben R. Ward, commenced this lawsuit asserting a cause of action pursuant to 42 U.S.C. § 1983 seeking declaratory judgment, punitive damages, and compensatory damages. (DPFOF ¶ 1.) At all times relevant to this action, the plaintiff was

---

[1] Facts are taken from Defendants' Proposed Findings of Fact (DPFOF).

an adult inmate incarcerated within the Wisconsin State Prison System at the Waupun Correctional Institution (WCI) commencing approximately May 27, 2004. (DPFOF ¶ 2.)

Defendant Charles Larson, M.D., was employed by the Wisconsin Department of Corrections ("DOC") as a physician at WCI. (DPFOF ¶ 3.) In his capacity as a physician, Dr. Larson has the duties and responsibilities of attending to the medical needs of inmates, diagnosing and treating illness and injuries, and arranging for professional consultation when warranted. (DPFOF ¶ 4.) He also assists in the supervision of the development and implementation of treatment protocols and patient flow charts. *Id.*

Defendant Belinda Schrubbe, R.N., is a registered nurse and is employed as the manager of the health services unit at WCI. (DPFOF ¶ 5.)

Defendant Linda Kleinstelber, who retired on January 6, 2007, was employed by the DOC as the nursing director/specialist at all times relevant. (DPFOF ¶ 6.) She retired on January 6, 2007. *Id.* In her capacity as nursing specialist, Kleinstelber had occasion to visit WCI in a management capacity, however, with respect to this action, she has not been there in the last ten years. (DPFOF ¶ 7.) Kleinstelber has never worked at WCI as a staff nurse. *Id.* One of her duties as a nursing specialist was to review requests for off site specialty services for the inmates to determine whether these requests met criteria for a specialty consultation. *Id.*

After reviewing the plaintiff's medical records, defendant Dr. Larson saw the plaintiff on January 20, 2006, regarding his complaints of "swollen neck glands". (DPFOF

3

¶ 11; Larson Aff. ¶ 7, Ex. A at 2-3[2]; Schrubbe ¶ 6.)  The plaintiff believed that the swollen glands were caused by his prostrate infection. *Id.*  However, the prostate would not cause swollen glands in the plaintiff's neck. *Id.*  Dr. Larson's assessment of the plaintiff's neck complaint was negative at that time and his plan was to follow up in two weeks. *Id.*

On February 6, 2006, Dr. Larson saw the plaintiff for follow up.  (DPFOF ¶ 12; Larson Aff. ¶ 8, Ex. A at 4.)  The plaintiff stated that he first noticed his neck glands swelling about five to six months prior to this. *Id.*  He claimed intermittent vocal hoarseness as well. *Id.*  Dr. Larson's assessment was that there was a slight increase in the plaintiff's anterior cervical nodes bilaterally, slightly tender, and slightly coarse voice. *Id.*  The plan was to apply for preauthorization to consult "ENT". *Id.*

On February 21, 2006, Dr. Hariri, an Otolaryngology Specialist, saw the plaintiff.  (DPFOF ¶ 13; Larson Aff. ¶ 9, Ex. A at 23.)  Dr. Hariri's assessment concluded a normal laryngeal and neck examination. *Id.*  Dr. Hariri's "Plan/Recommendations" stated: "normal exam" and "f/u prn".[3] *Id.*

On September 22, 2006, the plaintiff was seen by a registered nurse after submitting a Health Service Request to be seen for a bump on his neck.  (DPFOF ¶ 14; Larson Aff. ¶ 10, Ex. A at 12.)  The nurse referred the plaintiff to Dr. Larson for a further evaluation. *Id.*

---

[2] A true copy of relevant excerpts from the plaintiff's medical records is attached to Dr. Larson's affidavit and marked as Exhibit A.  (DPFOF ¶ 10.)

[3] "F/u prn" means "follow up when necessary." *See* http://www.medterms.com/script/main/art.asp?articlekey=8309 (defining "prn" as a Latin abbreviation meaning "when necessary") (website last visited July 28, 2008).

4

On September 29, 2006, defendant Dr. Larson saw the plaintiff for his complaint of a neck lump. (DPFOF ¶ 15; Larson Aff. ¶ 11, Ex. A at 13.) Dr. Larson diagnosed the lump as a resolving abscess. *Id.* The abscess was healing so there was nothing to culture. *Id.*

On December 15, 2006, the plaintiff was seen by a nurse for neck pain. (DPFOF ¶ 16.) The plaintiff's medical records state, "The patient is convinced that he has Laryngeal Cancer." (*Id.*; Larson Aff. ¶ 12, Ex. A at 15; Schrubbe Aff. ¶ 12.) The plaintiff wanted a second opinion and probably a biopsy and felt that he was not being treated. *Id.* The nurse informed the plaintiff that he had seen an ENT specialist, Dr. Hariri, and the examination was normal. *Id.* In addition, the plaintiff was advised to discuss his concerns with Dr. Larson. *Id.*

On December 18, 2006, Dr. Larson saw the plaintiff. (DPFOF ¶ 17; Larson Aff. ¶ 13, Ex. A at 15-16.) The plaintiff was loud and physically threatening with posturing, facial grimacing, and shouting. *Id.* He was making statements in regard to his cancer fears. *Id.* Dr. Larson had to back out of the room and instruct the plaintiff to return to the officer's desk. *Id.* The plan was to allow the plaintiff to collect his thoughts, calm down, and reschedule the appointment. *Id.* This was the last time Dr. Larson personally saw the plaintiff as he transferred to another institution. *Id.*

On December 28, 2006, the plaintiff was seen by the nurse practitioner. (DPFOF ¶ 20; Larson Aff. ¶ 16, Ex. A at 16.) The plaintiff stated that he had laryngeal cancer and was never treated. *Id.* The plaintiff stated that his family called the Cancer Center and they were told he has laryngeal cancer. *Id.* However, the plaintiff had never been seen by the Cancer Center. *Id.* The plaintiff was instructed that he had no history

5

of laryngeal cancer, had a normal exam in February 2006, and that there was no reason to suspect it. *Id.*

On January 9, 2007, the plaintiff was seen by the nurse practitioner. (DPFOF ¶ 21; Larson Aff. ¶ 17, Ex. A at 17-18.) The plaintiff, again, stated that he had laryngeal cancer and it was causing an airway obstruction. *Id.* The nurse practitioner instructed the plaintiff that no cancer was found at his February 2006 examination. *Id.* The plaintiff stated that he would get an injunction against the nurse practitioner. *Id.*

On February 5, 2007, the plaintiff was seen by a registered nurse for a complaint of pain in his left ear due to the cancer in his throat. (DPFOF ¶ 22; Larson Aff. ¶ 18, Ex. A at 18.) The nurse stated that after this statement the plaintiff began to ask for Vaseline tubes. *Id.* On April 25, 2007, the plaintiff was seen and treated for left external otitis. (DPFOF ¶ 23; Larson Aff. ¶ 19, Ex. A at 21.) On April 26, 2007, the plaintiff was seen and reported the pain in his neck was resolving. (DPFOF ¶ 24; Larson Aff. ¶ 20, Ex. A at 22.)

The plaintiff was seen by health staff on numerous occasions. (DPFOF ¶ 25.) From January 2005 to May 2007 he saw the doctor thirteen times, the nurse practitioner thirteen times, and the registered nurse forty times. *Id.* The plaintiff has been seen a minimum of twice a month by Health Services. *Id.* He also has been seen by an offsite specialist and the psychiatrist. *Id.*

The plaintiff was never diagnosed with laryngeal cancer and had no signs or symptoms to suggest otherwise. (DPFOF ¶ 27.) Any medical concern expressed by the plaintiff was addressed in an efficient and thorough manner. (DPFOF ¶ 28.)

6

Case 2:07-cv-00107-CNC   Filed 07/30/08   Page 6 of 12   Document 55

A Class III Prior Approval form was submitted by the plaintiff's physician for an appointment at the University of Wisconsin Hospital and Clinics. (DPFOF ¶ 29.) This Class III form was approved by defendant Kleinstelber and a copy of this was placed in the plaintiff's medical record. *Id.* The Class III was submitted because the plaintiff had been experiencing a sore throat and some swollen lymph nodes. *Id.* The criteria associated with this request did have laryngeal cancer as one of the possible criteria for a differential diagnosis. *Id.* It was not checked off by the physician. *Id.*

Kleinstelber's has reviewed the plaintiff's medical records and the report of the exam done at the University of Wisconsin Hospital and Clinics states that the plaintiff's exam was normal. (DPFOF ¶ 30.) No cancer was found. *Id.* Kleinstelber has never met the plaintiff nor communicated with him. (DPFOF ¶ 31.) And, at no time did defendant Schrubbe or Kleinstelber personally treat the plaintiff for his medical concerns. (DPFOF ¶ 32.)

**ANALYSIS**

In support of their motion for summary judgment, the defendants contend that, 1) they were not deliberately indifferent to the plaintiff's serious medical needs; 2) defendants Schrubbe and Kleinstelber must be dismissed because they had no personal involvement with the medical care given to the plaintiff; and 3) they are entitled to qualified immunity because their conduct does not violate clearly established federal law or constitutional rights. In response, the plaintiff asserts that the defendants are not entitled

to summary judgment because there are genuine issues of material fact to be resolved.[4]

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez*, 111 F.3d at 1373 (citations omitted). A medical condition need not be life-threatening to qualify as serious and to support a § 1983 claim, providing the denial of medical care could result in further significant injury or

---

[4] The plaintiff's response (Docket #45) consists of, 1) Declaration in Opposition to Defendants' Motion for Summary Judgment; 2) Statement of Disputed of Factual Issues; 3) Statement of the Case; 4) Statement of Facts; 5) Memorandum at Law; 6) Argument/Legal Argument; and 7) Exhibits. The plaintiff also requests that the court construe his complaint as an affidavit for the purposes of summary judgment. *See Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996).

Although district courts are not required to search the record for evidence sufficient to defeat a motion for summary judgment, *see Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 609-10 (7th Cir. 2005); *Doe v. Cunningham*, 30 F.3d 879, 885 (7th Cir. 1994), in this case the court has considered all of the plaintiff's filings included in his response, and his complaint, in resolving the defendants' motion. Of course, in considering the plaintiff's response, only those facts that comply with Federal Rule of Civil Procedure 56(e) may be used to create a genuine issue of material fact.

8

in the unnecessary infliction of pain. *See Reed v. McBride*, 178 F.3d 849, 852-53 (7th Cir. 1999); *Gutierrez*, 111 F.3d at 1371.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. *See Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (citing *Farmer*, 511 U.S. at 840-42).

It is undisputed that the plaintiff entered WCI on May 27, 2004. He saw Dr. Larson regarding his complaint of "swollen neck glands" on January 20, 2006. The plaintiff saw Dr. Larson on February 6, 2006, for a follow up appointment at which time the doctor planned to apply for preauthorization to consult an ear-nose-throat doctor. On February 21, 2006, the plaintiff saw Dr. Harari, an otolaryngology specialist, who assessed a normal laryngeal and neck examination and concluded that follow up care would be provided as necessary.

On September 22, 2006, the plaintiff saw a registered nurse regarding complaints of a bump on his neck. The nurse referred the plaintiff to Dr. Larson, who saw him on September 29, 2006, and diagnosed the lump as a resolving abscess that was healing.

9

Case 2:07-cv-00107-CNC   Filed 07/30/08   Page 9 of 12   Document 55

On December 15, 2006, the plaintiff saw a nurse for neck pain. At this appointment, it was noted the plaintiff's medical records: "The patient is convinced that he was Laryngeal Cancer." The nurse instructed the plaintiff that he had seen an ENT specialist, Dr. Hariri, and that the examination was normal. The plaintiff was advised to discuss his concerns with Dr. Larson. On December 18, 2006, Dr. Larson saw the plaintiff and at this appointment the plaintiff was loud and physically threatening to the point that Dr. Larson had to back out of the room and instruct the plaintiff to return to the officer's desk. The plaintiff was making statements regarding his cancer fears. This was the last time that Dr. Larson personally saw the plaintiff because Dr. Larson was transferred to another institution.

From January 2005 until May 2007, the plaintiff saw the doctor thirteen times, the nurse practitioner thirteen times, and the registered nurse forty times. He was also seen by an offsite ENT specialist and the psychiatrist. It is undisputed that the plaintiff has never diagnosed with laryngeal cancer and that he does not have laryngeal cancer.

The plaintiff's Statement of Disputed Factual Issues identifies the following "disputed factual issues": 1) the plaintiff was never given follow-up treatment for his pain after his February 21, 2006 appointment with Dr. Hariri; 2) the plaintiff was refused access to outside care after February 21, 2006, even after Dr. Hariri requested follow up; 3) defendant Schrubbe never answered the plaintiff's request for neck and ear pain treatment; and 4) defendant Kleinstelber states that she has never met or communicated with the plaintiff. (Pl.'s Statement of Disputed Factual Issues.)

The plaintiff asserts that defendant Nurse Schrubbe refused to answer him after he notified her on December 6, 2006, that he had laryngeal cancer. He also submits

that Dr. Larson and Nurse Kleinstelber have known about his cancer since February 10, 2006, and that they refused to treat it. (Pl.'s Statement of the Case at 1.) Furthermore, the plaintiff states that on December 26, 2006, he informed defendant Schrubbe that he was having severe neck pain and that he needed to go to the hospital. Continuing, the plaintiff maintains that he did not receive an answer from defendant Schrubbe and that this amounts to deliberate indifference. He adds that on December 25, 2006, he informed defendant Schrubbe that he was having severe neck pain and needed to go to a hospital and that this was his third request for treatment. The following day, another nurse responded to the plaintiff's request stating that he did not have to go to the hospital, that they would not see him for neck pain, and that he does not have laryngeal cancer. *Id.* at 4.

Based on the number of times the plaintiff saw the doctors and nurses while at WCI, it is clear that he has medical needs. However, it is unclear whether those needs are serious. In any event, it is not necessary to determine whether the plaintiff's medical need is "serious" because the undisputed facts reveal that the defendants were not deliberately indifferent to any medical need the plaintiff has.

The plaintiff's claim is based on his assertion that he has laryngeal cancer which the defendants have failed to treat. However, it is undisputed that the plaintiff does not have cancer. Although the plaintiff insists otherwise, he has not provided any admissible evidence to support his assertion. *See* Fed. R. Civ. P. 56(e); *see also Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002) (citing *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998) ("[i]t is well-settled that conclusory allegations . . . without support in the record, do not create a triable issue of fact")).

Moreover, the record reveals that the plaintiff received thorough medical care at WCI and that some of that care came from Dr. Larson. He was also treated at the University of Wisconsin Hospital and Clinics which found no cancer and concluded that the plaintiff's examination results were normal. The other defendants, due to the nature of their jobs, were not directly involved in the plaintiff's medical care. In view of this evidence, no reasonable fact finder could conclude that the defendants were deliberately indifferent to the plaintiff's medical needs.

Now, therefore,

**IT IS ORDERED** that the defendants' motion for summary judgment (Doc. #35) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for appointment of counsel (Doc. #53) is **DENIED**.

**IT IS FURTHER ORDERED** that this action is dismissed.

Dated at Milwaukee, Wisconsin, this 30th day of July, 2008.

                                        BY THE COURT

                                        s/ C. N. CLEVERT, JR.
                                        C. N. CLEVERT, JR.
                                        U.S. District Judge